**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1218

STATE OF MARYLAND,

        Plaintiff – Appellee,

  v.

3M COMPANY,

        Defendant – Appellant,

  and

CORTEVA INC.; DUPONT DE NEMOURS INC.; EIDP, INC., f/k/a E.I. Dupont De Nemours & Company, Incorporated; CHEMOURS COMPANY,

        Defendants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior U.S. District Judge. (1:23-cv-01836-RDB)

No: 24-1270

In re:  AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION,

------------------------------

STATE OF SOUTH CAROLINA EX REL ALAN WILSON, in his official capacity as Attorney General of the State of South Carolina,

        Plaintiff – Appellee,

23

v.

3M COMPANY,

        Defendant – Appellant,

    and

CORTEVA INC.; DUPONT DE NEMOURS INC., New DuPont; EIDP, INC., f/k/a E. I.
DuPont De Nemours & Company, Old DuPont; THE CHEMOURS COMPANY; THE
CHEMOURS COMPANY FC, LLC,

        Defendants.

───────────────

Appeal from the United States District Court for the District of South Carolina, at
Charleston. Richard M. Gergel, U.S. District Judge. (2:23-cv-05979-RMG)

───────────────

Argued: October 30, 2024                         Decided:  March 7, 2025

───────────────

Before AGEE and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────────

Vacated and remanded by published opinion. Judge Agee wrote the opinion, in which
Judge Rushing joined. Senior Judge Floyd wrote a dissenting opinion.

───────────────

**ARGUED:**  Paul D. Clement, CLEMENT & MURPHY, PLLC, Alexandria, Virginia, for
Appellant.  Victor Marc Sher, SHER EDLING LLP, San Francisco, California; Algernon
Gibson Solomons III, SPEIGHTS & SOLOMONS, Hampton, South Carolina, for
Appellee.  **ON BRIEF:**  Amir C. Tayrani, Katherine Moran Meeks, Zachary Tyree,
Washington, D.C., Lauren R. Goldman, GIBSON, DUNN & CRUTCHER LLP, New York,
New York, for Appellant.  Anthony G. Brown, Attorney General, Patricia V. Tipon,
Assistant Attorney General, Adam D. Snyder, Assistant Attorney General, OFFICE OF
THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland; Stephanie D.
Biehl, Ashley B. Campbell, SHER EDLING LLP, San Francisco, California; Scott E.
Kauff, Derek Y. Sugimura, Alexander Latanision, LAW OFFICES OF JOHN K. DEMA,
P.C., Rockville, Maryland; John D.S. Gilmour, Houston, Texas, Melissa E. Byroade,
KELLEY DRYE & WARREN LLP, Washington, D.C., for Appellee State of Maryland.
Alan M. Wilson, Attorney General, W. Jeffrey Young, Chief Deputy Attorney General,
C.H. Jones, Jr., Senior Assistant Deputy Attorney General, Jared Q. Libet, Assistant Deputy
Attorney General, Kristin M. Simons, Senior Assistant Attorney General, Danielle A.

Robertson, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina; Jonathan M. Robinson, Frederick N. Hanna, Jr., Austin T. Reed, SMITH ROBINSON HOLLER DUBOSE & MORGAN, LLC, Columbia, South Carolina; Vincent A. Sheheen, Michael D. Wright, SAVAGE, ROYALL & SHEHEEN, LLP, Camden, South Carolina, for Appellee State of South Carolina.

AGEE, Circuit Judge:

In this consolidated appeal, 3M Company challenges the denial of its attempts to remove two mirroring lawsuits brought in state court by Maryland and South Carolina (collectively, "the States") to federal court under 28 U.S.C. § 1442(a)(1). When a private entity like 3M invokes that provision—commonly referred to as the federal officer removal statute—as its basis for removal, it must plausibly allege, among other elements, that the conduct charged in the complaint was taken for or in relation to asserted federal authority. *See Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343, 347–48 (4th Cir. 2024).

This appeal asks if 3M satisfied that requirement by plausibly alleging that its production of aqueous film-forming foam ("AFFF") for the United States military related to the charged conduct despite the States' attempts to disclaim that conduct from the scope of their complaints. The district courts credited the States' respective disclaimers, and on that basis rejected 3M's bids for federal officer removal. For the reasons discussed below, we disagree with their conclusion. We therefore vacate the district courts' decisions and remand for further consideration as to whether 3M has satisfied the other elements needed to avail itself of a federal forum under § 1442(a)(1).

I.

A.

Some states have initiated litigation to hold chemical manufacturers responsible for damaging the environment with certain manmade chemicals. Specifically, companies like 3M are being sued for their use of a class of synthetical chemicals—per- and

4

polyfluoroalkyl substances ("PFAS")—in their production of consumer and industrial products.

PFAS have useful properties, including that they help repel heat, stains, and other harsh factors, and are used in a wide range of goods like non-stick cookware and upholstery shields that are sold directly to consumers. PFAS are also used in industrial products including, as relevant here, 3M's AFFF, a widely used firefighting foam.

One of 3M's AFFF customers was the United States military, which deemed AFFF valuable enough to use on military bases, airfields, and naval vessels to fight fuel fires. The manufacture and sale of AFFF to the military is governed by rigorous specifications administered by the Department of Defense, through the Naval Sea Systems Command, which—until recently—required the use of certain PFAS in AFFF. Before the military could procure AFFF from a private manufacturer like 3M, the AFFF had to be examined to ensure it met the military's specifications. And 3M's AFFF evidently passed DOD muster, because 3M manufactured and sold PFAS-containing AFFF to the United States military for more than three decades. For clarity, we refer to the PFAS-containing AFFF 3M produced for the military as "Military AFFF."

Their useful qualities notwithstanding, PFAS could pose a serious threat to the environment. PFAS dissolve easily in water due to their chemical makeup, spread quickly and broadly, and may remain in the environment indefinitely. In addition, PFAS can be noxious to animals and other living organisms, and substantial exposure to the chemical compounds could lead to significant health issues in humans.

5

B.

In 2023, the States commenced PFAS-related litigation by filing lawsuits targeting 3M and other manufacturers for their role in allegedly contaminating Maryland and South Carolina's respective waterways by using PFAS in the production of their products.

1.

Maryland filed two overlapping lawsuits in state court against 3M for its alleged contamination of Maryland waters, bringing the same seven state-law causes of action against 3M in both complaints.[1] The only meaningful difference in the complaints is that one was directed toward 3M's PFAS production through its manufacture of AFFF generally—Military AFFF and otherwise—while the other was directed towards 3M's production of other PFAS-containing products and specifically excluded any AFFF. *E.g.*, J.A. 46 ("Through this [non-AFFF complaint] the State does not, however, seek any remediation . . . related to any PFAS contamination caused by AFFF . . . . The State's claims with respect to AFFF are the subject of a separate action.").

3M promptly removed the non-AFFF suit to the District of Maryland under the federal officer removal statute.[2] According to 3M, removal of that action was proper

---

[1] The causes of action against 3M are: (1) Strict Products Liability – Defective Design; (2) Strict Products Liability – Failure to Warn; (3) Public Nuisance; (4) Trespass; (5) Negligence; (6) Violation of Environment Article, Title 9, Subtitle 3; and (7) Violation of Environment Article, Title 9, Subtitle 4.

[2] In both States' lawsuits, 3M also removed the AFFF complaint to federal court. The States did not move to remand the AFFF complaints, nor is the removal of those complaints at issue in this case.

We also note that 3M also initially raised federal enclave jurisdiction as a ground for removal in the States' non-AFFF lawsuits, but no longer pursues removal on that basis.

6

despite Maryland's disclaimer because the PFAS from 3M's non-AFFF products indistinguishably commingled with the PFAS from 3M's Military AFFF. To the extent the PFAS contamination came from Military AFFF, 3M intended to raise the government contractor defense. And because the PFAS from both sources were commingled, PFAS from 3M's Military AFFF "inseparably contributed to any alleged 'non-AFFF' PFAS contamination." J.A. 21. Maryland, in turn, moved to remand the non-AFFF complaint to state court, arguing that 3M had no basis for removal under 28 U.S.C. § 1442(a)(1).[3]

The district court agreed with Maryland. In so deciding, it gave Maryland's disclaimer dispositive effect, reasoning that by virtue of the disclaimer, the non-AFFF complaint was limited in scope and precluded a connection between 3M's PFAS contamination and its federal authority. Consequently, the district court determined that any possible federal defense would not be present. *Maryland v. 3M Co.*, No. 23-cv-1836, 2024 WL 1152568, at *3 (D. Md. Feb. 12, 2024) ("[T]he explicit exclusion of AFFF from this lawsuit renders it impossible for [3M] to be held liable for damages stemming from its actions under federal authority, and so the requisite connection or association is missing." (cleaned up)). It thus remanded the non-AFFF complaint to state court.

---

[3] We also note that once it removed the case, 3M also moved to transfer this complaint to the AFFF Products Liability Litigation MDL. The MDL Panel denied transfer but reasoned that "if it becomes clearer that [Maryland's] AFFF and non-AFFF actions involve the same ground or surface waters," transfer may eventually be appropriate. J.A. 219.

2.

Similar to Maryland's strategy, South Carolina also filed two PFAS contamination lawsuits in state court, bringing exclusively state-law claims against 3M.[4] And like Maryland, South Carolina's otherwise overlapping complaints were bifurcated on the basis that one was directed towards 3M's PFAS production through AFFF products, while the other was directed to remediate pollution from 3M's non-AFFF PFAS production. *E.g.*, J.A. 275–76 ("PFAS as defined in this Complaint expressly excludes [AFFF] . . . . The State is not seeking to recover through this Complaint any relief for contamination or injury related to AFFF or AFFF products used at airports, military bases, or certain industrial locations.").

3M again invoked § 1442(a)(1) to remove South Carolina's non-AFFF complaint to the District of South Carolina for the same reasons asserted in the Maryland case. South Carolina then moved to remand to state court on similar grounds used by Maryland: that the scope of its complaint, considering its disclaimer, expressly excluded any connection to AFFF and therefore 3M's federal work. As in the Maryland case, the South Carolina district court agreed with the state and found that the disclaimer effectively precluded federal officer removal. *South Carolina v. 3M Co.*, No. 2:23-cv-05979, 2024 WL 1470056, at *3 (D.S.C. Feb. 29, 2024) (concluding that the "disclaimers moot 3M's government contractor defense because, whether or not 3M meets the requirements for the defense, it cannot be held liable in this case for PFAS contamination originating from AFFF," and

---

[4] The stated causes of action are: (1) Public Nuisance; (2) Private Nuisance; (3) Trespass; and (4) Violation of the South Carolina Unfair Trade Practice Act.

8

that "the charged conduct here is not connected to the alleged federal authority"). Finding no basis for removal, it remanded the non-AFFF case to state court.

* * * *

3M timely appealed both remand decisions and we consolidated the appeals for review. We have jurisdiction under 28 U.S.C. § 1447(d). *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 250 (4th Cir. 2021).

II.

Because they involve issues of subject matter jurisdiction, we review the district courts' decisions on whether to sustain federal officer removal de novo. *Anne Arundel Cnty.*, 94 F.4th at 347. The removing party bears the burden of convincing us that the actions belong in federal court. *W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 297 (4th Cir. 2022). To carry that burden, it must file a notice that includes "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), meaning there must be "a plausible allegation" that federal jurisdiction is proper, *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (explaining that a § 1446 notice of removal is analyzed under the same scrutiny as Rule 8's pleading requirements).

We recite some of 28 U.S.C. § 1442(a)(1)'s guiding principles before applying them to 3M's appeals.

A.

By enacting the federal officer removal statute, Congress "promise[d] a federal forum for any action against an 'officer (or any person acting under that officer) of the

9

United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.'" *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 234–35 (2021) (quoting 28 U.S.C. § 1442(a)(1)). The statute's purpose is to give effect to the legislative principle that those acting at the federal government's direction should be able to defend themselves in federal—not state—court, lest states be able to stymy the federal government's operations. *See Willingham v. Morgan*, 395 U.S. 402, 405–06 (1969) (recounting the statute's history); *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147–48 (2007) (same, and explaining how that purpose extends to protecting private parties who assist the federal government). Coextensive with the "legislatively-spawned value judgment that a federal forum should be available when particular litigation implicates a cognizable federal interest," § 1442(a)(1) is meant "to ensure a federal forum in any case where a federal official or private actors acting on that official's behalf may raise a defense arising out of his official duties." *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 185 (1st Cir. 2024) (cleaned up); *see also Willingham*, 395 U.S. at 406–407.

Accordingly, § 1442(a)(1)'s promise of a federal forum is necessarily broad.[5] So rather than "narrow, grudging interpretation[s] of the statute," *Jefferson Cnty. v. Acker*, 527

---

[5] Indeed, as one of our sister circuits recognized in recounting the statute's history, Congress has shown a steady inclination towards broadening the statute. *See Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) ("Some version of this statute has been in effect since 1815. . . . Over time, though, Congress has broadened the removal statute repeatedly."). Particularly relevant to this appeal, Congress saw fit to amend the federal officer removal statute in 2011 to "broaden[] the universe of acts that enable federal removal, such that there need be only a connection or association between the act in question and the federal office." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (cleaned up).

U.S. 423, 431 (1999) (quoting *Willingham*, 395 U.S. at 407), "the statute must be 'liberally construed,'" *Watson*, 551 U.S. at 147 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). And under that broad scope, the general rules guiding removal—including that a defendant may remove a case from state to federal court only if the federal court had original jurisdiction to hear the case, *see* 28 U.S.C. § 1441(a)—are inapplicable. *Cf. Willingham*, 395 U.S. at 406 ("[T]he right of removal under § 1442(a)(1) is made absolute whenever a suit in a state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court."). Similarly, "the ordinary presumption against removal does not apply" to federal officer removal. *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 251 (cleaned up). General removal principles are, in other words, inverted when § 1442(a)(1) is at issue.

To that end, when a plaintiff sues a defendant that can plausibly invoke removal under § 1442(a)(1), he relinquishes his otherwise ubiquitous power to select a state forum instead of a federal one by writing his complaint a certain way. Generally, of course, a "plaintiff is the master of the complaint," and "the well-pleaded-complaint rule enables him, by eschewing claims based on federal law, to have the cause heard in state court." *Holmes Grp. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (cleaned up). But the federal officer removal statute "is an exception to the well-pleaded complaint rule" insofar as it "allows suits against federal officers to be removed despite the nonfederal cast of the complaint, and reflects a congressional policy that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (cleaned up); *see also Jefferson Cnty.*, 527 U.S.

11

at 431 ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint.").

With those principles in hand, we apply them to this appeal.

B.

3M may sustain removal under § 1442(a)(1) if it plausibly alleges "(1) that it acted under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct was carried out for or in relation to the asserted official authority." *Anne Arundel Cnty.*, 94 F.4th at 347–48 (internal quotations omitted). The district courts found that 3M had not met its burden as to the third element based on the States' disclaimers, which purported to establish that they were not charging 3M with conduct that was related to its production and sale of Military AFFF. For the reasons discussed below, we hold that finding is erroneous.

1.

To satisfy the third element under the federal officer removal statute, often referred to as the nexus or connection requirement, "a defendant must show it is being sued for an act or acts that it claims were done under—or related to acts done under—federal authority." *Anne Arundel Cnty.*, 94 F.4th at 349. In considering whether the relevant conduct relates to a contractor's federal work, "'[w]e credit *Defendants'* theory of the case when determining whether' there is such a connection or association." *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 256 (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (emphasis added)); *see Jefferson Cnty.*, 527 U.S. at 432. Importantly, a removing defendant need not establish "an airtight case on the merits in order to show the

required causal connection." *Jefferson Cnty.*, 527 U.S. at 432. That said, a proponent for removal decidedly does not satisfy the nexus element by alleging only that the "plaintiff's entire civil action in a general sense" is related to the defendant's federal work. *Anne Arundel Cnty.*, 94 F.4th at 348.

We first reject the notion that the States' purported disclaimers of 3M's federal conduct were dispositive. The States invite us to credit their disclaimers, just as the district courts did. They contend those complaints were tailored to preclude any connection to 3M's federal conduct by excluding AFFF as a source of the relevant PFAS contamination. Under their theory, we should credit how they defined the charged conduct which, by definition, excludes 3M's production and sale of Military AFFF, thus severing 3M's alleged federal connection. But that theory ignores the unique lens through which we consider federal officer removal.

Two general points illustrate why we cannot accept the States' attempts to immunize their complaints from federal officer removal with their purported disclaimers in this case. First, as we have noted, a plaintiff in the § 1442(a)(1) removal context is no longer the master of its complaint in the sense that it cannot preempt removal to a federal court merely because the complaint is glossed only in state law. Instead, we look to a defendant's well-pleaded facts of removal to see if it is entitled to a federal forum despite the "nonfederal cast of the complaint." *Kircher*, 547 U.S. at 644 n.12. Second, in this context we must credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work. *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at

13

256. Under these principles, we cannot blindly accept the States' theory of charged conduct and the connection to 3M's federal work.

As our sister circuits agree, "[a] disclaimer that requires a state court to determine the nexus 'between the charged conduct and federal authority' is not a valid means of precluding removal." *Gov't of Puerto Rico*, 119 F.4th at 188 (quoting *Willingham*, 395 U.S. at 409); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 n.3 (7th Cir. 2020) (rejecting plaintiffs' similar attempted disclaimer where the underlying dispute was a pollutant's source, because the defendant "allege[d] that its Freon-12 production [for the government] resulted in waste streams that contained lead and arsenic," which were "the two main toxins [plaintiffs] claim harmed them"). We likewise decline to give dispositive effect to the States' disclaimers.

The States fight this conclusion by pointing to *Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014), a case where we accepted a plaintiff's disclaimer as to a potential federal source of his mesothelioma as a jurisdictional chess move to keep his case in state court. In *Wood*, the plaintiff sued the Crane Company for exposing him to asbestos while working with asbestos-containing valves *and* gaskets that Crane produced for the Navy. *Id.* at 318. Crane invoked federal officer removal on the basis that it could assert a federal contractor defense as to the valves, but did not make the same contention with respect to the gaskets. *Id.* at 318–19. After the plaintiff disclaimed any claims related to the valves, the district court remanded the case to state court, and only then did Crane assert that the gaskets also served as a proper ground for federal officer removal because they also contributed to the plaintiff's injury and were produced as part of Crane's federal work. *Id.* at 319–20. We

14

upheld the remand because Crane's federal officer removal claim based on the gaskets was untimely under 28 U.S.C. § 1446(b). *See id.* at 321–22.

But *Wood* does not bear the weight the States assign to it. There, Crane's only timely theory of removal was entirely different than that which 3M asserts here. Crane's notice of removal alleged that one source of an indivisible injury gave rise to federal officer removal but failed to timely contest that that federal connection was inextricably linked to its federal conduct and ensuing indivisible injury. *See id.* at 322–24. For *Wood* to control here, 3M's allegation that PFAS from its Military AFFF production and its non-AFFF production were inextricably linked would have had to be untimely. It was not. Put another way, Crane's theory of the case that could have otherwise invalidated the plaintiff's disclaimer was never properly before us such that we could consider or ultimately credit it. That difference alone renders *Wood* inapposite.

At bottom, the States' artful pleading does not trump 3M's theory for removal here. Accordingly, the States' disclaimers are not dispositive to whether the third element for establishing removal has been satisfied. The district courts erred in holding otherwise.

That said, our conclusion that the States' disclaimers are not dispositive does not necessarily mean that 3M has satisfied the third element; it still bears the burden of showing that it satisfied the requisite nexus. Accordingly, we ask if, under 3M's theory of the case, it plausibly alleged that its charged conduct was related to its federal work. *See Anne Arundel Cnty.*, 94 F.4th at 349. Under that theory, the nexus element would be satisfied because PFAS from different sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant

15

waterways. Some of the PFAS contamination charged by the States came from Military AFFF, so any remediation would necessarily implicate work that 3M did for the federal government.

Though it may not be an "airtight case on the merits," it does not have to be, *Jefferson Cnty.*, 527 U.S. at 432, and we conclude that 3M's theory of connection holds sufficient water to establish this element under the federal officer removal statute's broad scope. Both States plead general PFAS contamination near military bases where 3M alleges it sold Military AFFF. On this record, we have no trouble considering as plausible 3M's allegations that some of the PFAS contamination at issue even in the non-AFFF complaints may come from their Military AFFF production.

3M identifies two pertinent questions that highlight how the charged conduct relates to its federal work. First, deciding whether certain PFAS contamination came from 3M's Military AFFF or from its non-AFFF products presents a challenging causation question— one that 3M argues is impossible to bifurcate—that will ultimately fall to a factfinder. Second, assuming that causation question can be answered, the same factfinder must then apportion how much of a given sample of PFAS contamination came from Military AFFF compared to non-AFFF products. Whatever factfinder ultimately decides liability in this case will have to disentangle those questions. The need to unravel such challenging questions in this case establishes that 3M's federal work is inextricably related to the charged conduct. *See Baker*, 962 F.3d at 943–45.

*Baker* indicates that a company like 3M satisfies the nexus element for removal if the factfinder will need to identify the sources of pollutants where the company has been

16

charged with polluting the environment through manufacturing some products for the federal government. In *Baker*, residents of a housing complex sued a host of industrial manufacturing companies for contaminating the soil around the site with harmful chemicals. *Id.* at 940. The plaintiffs argued that the relevant pollution came from the chemical companies' general consumer operations, while the chemical companies invoked federal officer removal on the basis that some of the pollution came from their production of goods for the federal government during World War II. *Id.* The residents opposed removal on the ground that the companies failed to establish the nexus requirement because they had not shown that the plaintiffs' injuries were caused by the companies' federal work. *See id.* at 943–44. The Seventh Circuit disagreed and concluded that the companies established the nexus element because the plaintiffs' "questions about whether the Companies' pollution that allegedly caused the Residents' injuries flowed from the Companies' specific wartime production for the federal government or from their more general manufacturing operations outside those confines" were "*merits questions* that a federal court should decide." *Baker*, 962 F.3d at 944 (citing *Willingham*, 395 U.S. at 409) (emphasis in original).

Because 3M has plausibly alleged that the PFAS intermingled to the point that it is impossible to identify their source, we can plausibly infer that 3M's Military AFFF contributed to at least a "portion of their relevant conduct." *Id.* at 945. Thus, "[g]iving [it] the benefit of all reasonable inferences from the facts alleged," we conclude that 3M has satisfied the nexus requirement. *Id.* After all, the federal officer removal statute's purpose is to provide a federal forum "when particular litigation implicates a cognizable federal

17

interest," like holding a government contractor liable for producing products for, and in line with the specifications, of the United States military. *Gov't of Puerto Rico*, 119 F.4th at 185 (internal quotations omitted). Where the parties dispute difficult factual questions about that federal interest, a contractor acting at the government's direction "should have the opportunity to present their version of the facts to a federal, not a state, court." *Willingham*, 395 U.S. at 409; *Gov't of Puerto Rico*, 119 F.4th at 189 ("To the extent the parties raise factual disputes about the scope of a defendant's federal obligations, Congress gave federal officers 'the protection of a federal forum' in which to resolve those disputes." (quoting *Willingham*, 395 U.S. at 407)).

If, on the other hand, a plaintiff concedes that those kinds of difficult questions are unnecessary for purposes of establishing liability, it may remain in state court. *See Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 849 (7th Cir. 2024). In *Raoul*, Illinois sued 3M for PFAS contamination emanating from a single facility, disclaiming contamination from any other facility. *Id.* at 847–48. 3M removed the suit under 28 U.S.C. § 1442(a)(1), alleging that some of the same PFAS contamination could have come from Military AFFF that was being stored at a military arsenal twenty-five miles up the river. *Id.* at 848. But Illinois "clearly and unequivocally conceded at oral argument that it would not seek relief against 3M for mixed PFAS contamination" and "expressly agreed that a factfinder will not need to apportion the PFAS contamination between sources." *Id.* at 849. That concession meant that "[i]f even a morsel of contamination [was] not from PFAS produced at the [non-military] Facility, . . . the State's recovery [was] barred." *Id.* The Seventh Circuit affirmed the district court's remand to state court, concluding the case fell "outside the scope of

18

*Baker*" because Illinois' concession mooted the causation and apportionment questions 3M now cites.[6] *Id.*

*Raoul* was published after briefing in this appeal concluded, but both parties submitted letters addressing it under Fed. R. App. P. 28(j). Soon thereafter, we asked the States whether they intended to make a similar concession as Illinois did in *Raoul* such that their recovery would be barred if "even a morsel of contamination" derived from Military AFFF. ECF No. 52. The States made clear they did not so concede, instead arguing that such a concession was unnecessary because, despite the inevitable presence of the causation and apportionment questions in state proceedings, there was still "no federal connection to the non-AFFF PFAS contamination that is the charged conduct in these lawsuits." ECF No. 53.

For the reasons just discussed, we disagree with the States. In *Raoul*, "100% of th[e] contamination must [have been] sourced from" the single, geographically limited facility for the state to recover. 111 F.4th at 849. As a result, no state factfinder would need to "apportion the PFAS contamination between sources." *Id.* But here, the States envision recovering for mixed PFAS contamination from numerous geographic locations. Even if they cannot ultimately recover for PFAS contamination from Military AFFF based on the scope of their complaints, a factfinder must, unlike in *Raoul*, still decide the important

---

[6] The *Raoul* court determined that Illinois' concession meant that 3M failed the "colorable federal defense" element of federal officer removal. *Raoul*, 111 F.4th at 849. However, its reasoning is sound in comparing it with the relevant parts of *Baker* discussed previously.

19

causation and allocation questions. And as stated, those are merits questions that belong in federal court. *Cf. Gov't of Puerto Rico*, 119 F.4th at 189; *Baker*, 962 F.3d at 944.

In sum, we hold that 3M's Military AFFF production is inextricably related to the States' general allegations of PFAS contamination, notwithstanding their attempts to draw a line between 3M's federal and non-federal work.

2.

Now satisfied that 3M meets the nexus element of the federal officer removal statute, "we turn to whether the case should be remanded to the district court for a ruling on the remaining two requirements for federal officer removal"—that it (1) acted under a federal officer and (2) has a colorable federal defense—or if we should conduct the rest of the analysis in the first instance, as 3M requests. *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 254. That decision is discretionary, but we believe it best here to follow the general rule that "federal appellate courts should not consider issues that were not first addressed by the district court." *Id.* (citing *Bakker v. Grutman*, 942 F.3d 236, 242 (4th Cir. 1991)). In *County Board of Arlington County*, we went on to consider the remaining federal officer removal elements despite the district court not having done so under the "unique circumstances" of that appeal, including the fact that the other elements had "been fully briefed." *Id.* Because similarly unique circumstances are not present here, we will not exercise the same discretion and will leave it to the district courts to consider whether 3M is otherwise entitled to federal officer removal in each case.

We note that this case is likely one where "the acting-under and causal-nexus prongs . . . collapse into a single requirement." *Mayor & City Council of Balt. v. BP P.L.C.*,

20

31 F.4th 178, 228 (4th Cir. 2022) (cleaned up). But though the district courts mentioned the colorable defense element, their findings on that element stemmed entirely from their decisions—which we now hold were misguided—to give the States' disclaimers dispositive effect. *See Maryland v. 3M Co.*, 2024 WL 1152568, at *3 (noting that "3M fail[ed] to demonstrate the . . . colorable federal defense to sustain removal to federal court," because the State "abandoned any claims in this case that would allow 3M to utilize the government contractor defense"); *South Carolina v. 3M Co.*, 2024 WL 1470056, at *3 (reasoning that "the disclaimers moot 3M's government contractor defense because, whether or not 3M meets the requirement for the defense, it cannot be held liable in this case for PFAS contamination originating from AFFF"). The States' briefing before us did the same thing, and even 3M's briefing on these important remaining elements was perfunctory. And the parties did not touch on the colorable federal defense at oral argument. This is not a case where the remaining elements have been robustly engaged throughout the process.

Instead of deciding these issues for the first time without the benefit of full briefing, we find the better course is to allow the district courts to decide in the first instance whether 3M plausibly alleged a colorable federal defense in each case with the understanding that 3M satisfied the nexus element for removal.

## III.

Despite the States' artful crafting of their complaints, 3M's notices of removal plausibly alleged that the conduct for which the States sued them is at least related to the

company's federal work. We therefore vacate the district courts' decisions and remand for consideration of whether 3M satisfied the other elements needed for federal officer removal, should the States continue to challenge removal, as well as such other necessary proceedings consistent with this opinion.

*VACATED AND REMANDED*

FLOYD, Senior Circuit Judge, Dissenting:

Maryland and South Carolina sought remediation for alleged harm to natural resources within their boundaries due to 3M's production of products containing PFAS. Each state filed two actions: one alleged harm from production of PFAS-containing firefighting foam used at military installations and commercial airports, referred to generally as AFFF; the other alleged harm from non-AFFF sources including "food packaging, carpeting, cookware, clothing, and upholstery" manufactured for the consumer market. J.A. 43. 3M removed both suits to district court. The district court then remanded the States' non-AFFF suits, which raise exclusively state law claims, to state court because it found the States' disclaimers on recovery from AFFF effective.

The majority vacates those remand orders, holding that, under 3M's theory of the case, the non-AFFF suits are sufficiently "relat[ed] to" acts taken under federal authority within the meaning of the relevant removal statute, 28 U.S.C. § 1442(a)(1). However, I would affirm the district court's remand orders. I respectfully dissent.

I agree with the majority that the federal officer removal statute serves an important purpose in our courts. It functions to "protect against the interference with federal operations that would ensue if a state were able to arrest federal officers and agents acting within the scope of their authority and bring them to trial in a state court for an alleged state-law offense." *Mayor and City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452, 461 (4th Cir. 2020) (noting avoidance of prejudice against unpopular federal law or federal officials, impediments to enforcement of federal law, or inability to assert federal defenses as goals of statute), *vacated on other grounds*, 593 U.S. 230 (2021). And I too

23

acknowledge that the statute must be "liberally construed" and that the "ordinary 'presumption against removal' does not apply." *Id.* (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018)).

Even so, I believe the district court properly granted the States' motions to remand these cases to state court. While our Court and others have recognized that a broad range of conduct satisfies the nexus requirement for purposes of federal officer removal jurisdiction, I would not read the removal statute to sweep so broadly to include the States' non-AFFF claims in the present consolidated appeals.

My view is guided by the factual dissimilarities between other cases considering the nexus issue and the one before us, starting with *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020). In *Baker*, the complained-of contaminants—lead and arsenic—were components of the Freon-12 that removing defendants had produced for the federal government during World War II. *See id.* at 945 n.3. The plaintiffs sought to disclaim relief from harm alleged to have occurred during the defendants' wartime production and leave open only the possibility of recovery for lead and arsenic pollution generated outside that time frame. *See id.* at 945. Unlike the State plaintiffs before us, the *Baker* plaintiffs sought to excise recovery for a particular period of defendants' conduct (which resulted in lead and arsenic pollution) and to recover only for that same pollution produced at the same facility at different times, when the facility was not manufacturing products for the federal government. *See id.* In other words, I think the case we decide today is distinguishable from *Baker* because South Carolina and Maryland seek to recover from harm resulting

24

from a discrete category of consumer products unrelated to 3M's federal conduct of manufacturing firefighting foam to military specifications.[*]

Other decisions ruling on this aspect of federal officer removal likewise reveal stronger links "between the charged conduct and asserted official authority" than the one here. *Baker*, 962 F.3d at 943. In *Latiolais v. Huntington Ingalls, Inc.*, an en banc Fifth Circuit held that the defendant shipyard seeking removal showed that the nexus requirement was satisfied. 951 F.3d 286, 296 (5th Cir. 2020). The plaintiff, Latiolais, worked as a machinist at the shipyard and alleged his mesothelioma was caused by asbestos exposure when the defendant refurbished a U.S. Navy ship pursuant to a federal contract. *See id.* at 289–90. The court rejected the plaintiff's argument that the asbestos exposure did not meet the nexus requirement because the defendant "performed the refurbishment and, allegedly, the installation of asbestos pursuant to directions of the U.S. Navy." *Id.* at 296. The First Circuit also declined to credit the Commonwealth of Puerto Rico's purported disclaimer of "relief relating to any federal program" in defendant Caremark's prescription drug rebate negotiations, which plaintiff Puerto Rico contended improperly inflated the price of insulin and other medications. *Gov't of Puerto Rico v. Express Scripts,*

---

[*] More recently, the Seventh Circuit decided *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024). *Raoul* presented similar facts to the case before us, except for a disclaimer of relief related to mixed PFAS contamination—a disclaimer the plaintiffs in this case did not make. *See id.* at 848–49. The *Raoul* court permitted the case to remain in state court because the disclaimer foreclosed the possibility of a "colorable federal defense." *Id.* at 849. But I disagree with the implicit holding in *Raoul* that the nexus requirement was satisfied under the facts of that case for the same reasons I disagree with the outcome here: the tenuous connection between the non-AFFF claims and actions taken under federal authority.

*Inc.*, 119 F.4th 174, 181–82 (1st Cir. 2024). The court recognized that Caremark's negotiations concerned private insurance plans and federally administered insurance plans at the same time; there were no federal-only negotiations, and no way to separate them for purposes of recovery. *See id.* at 191–92. Therefore, the Commonwealth's claims remained in federal court. *Id.* at 194.

Finally, our most recent discussion of this issue: *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017). In *Sawyer*, we reversed the district court's order remanding the litigation to state court. *Id.* at 252–53. Like the *Latiolais* plaintiff, the *Sawyer* plaintiff was employed at a shipyard, worked on U.S. Navy vessels, and was allegedly exposed to asbestos during that time. *Id.* His estate brought an action in state court against Foster Wheeler, a boiler manufacturer, alleging that it had failed to warn him of the dangers of asbestos used in the boilers. *Id.* However, in assessing whether this conduct "relate[d] to" an act taken under federal authority, 28 U.S.C. § 1442(a)(1), we determined it was sufficiently related because "the Navy dictated the content of warnings" on the boilers and Foster Wheeler installed them according to Navy requirements. *Sawyer*, 860 F.3d at 258.

I am concerned that today's decision will sweep lawsuits properly before state courts into federal fora, at least to the extent it concerns a given claim's nexus to acts under federal authority. The decisions outlined above share an important attribute: the complained-of conduct could not be separated from the relevant federal authority. *See Baker*, 962 F.3d at 945 n.3 (lead and arsenic pollution from facility where government-contractor produced same pollution); *see also Express Scripts*, 119 F.4th at 191 (pharmaceutical price negotiations were not separated into "federal" and "non-federal"

26

components); *Latiolais*, 951 F.3d at 289–90 (asbestos exposure from work on Navy ship at shipyard); *Sawyer*, 860 F.3d at 258 (same). In this case, 3M seeks to remove a claim seeking recovery for pollution from products made for and sold on the consumer market; the majority concludes that the causal nexus is satisfied because the resulting pollutants are commingled in the environment. I believe that this connection is too tenuous to support removal jurisdiction—while some of the pollution may be commingled, that does little to alter the fact that the non-AFFF PFAS pollution is caused by 3M's manufacturing activities that are entirely unrelated to its work as a government contractor.

As I see it, the court reads the nexus requirement so broadly as to move toward foreclosing state courtrooms to plaintiffs bringing state-law claims against defendants, when those defendants in turn identify even the slightest connection between the claims at issue at work they have performed as government contractors. But "[o]ur federal system trusts state courts to hear most cases—even big, important ones that raise federal defenses." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 705 (3d Cir. 2022). Given what I see as the scant connection shown between 3M's production of consumer products and its AFFF production, I would trust the courts of Maryland and South Carolina to hear these cases and ensure any liability is apportioned properly.

Because I do not think the alleged non-AFFF PFAS pollution providing the basis for the State's claims sufficiently relates to 3M's acts performed for the federal government, I would affirm the district court's remand orders. The majority does not, and so I respectfully dissent.